IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| JACQUELINE LOEW,<br><br>      Plaintiff,<br><br>vs.<br><br>SAYDEL COMMUNITY SCHOOL DISTRICT and KEVIN SCHULTE,<br><br>      Defendants. | Case No. _____<br><br><br>**PETITION<br>AND<br>JURY DEMAND** |

COMES NOW the Plaintiff, Jacqueline Loew, and states the following for her cause of action against Defendants:

## INTRODUCTION

1. This is an action under the Iowa Civil Rights Act, challenging Defendants' illegal sex and/or gender discrimination and retaliation against Plaintiff.

2. Plaintiff Jacqueline Loew is a resident of San Luis Obispo County, California.

3. Defendant Saydel Community School District is an educational institution located in Polk County, Iowa.

4. Defendant Kevin Schulte is believed to be a resident of Polk County, Iowa.

5. The acts of which Plaintiff complains occurred in Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

6. On October 20, 2021, within 300 days of the acts of which she complains, Plaintiff filed charges of sex discrimination and retaliation against Defendants with the Iowa Civil Rights Commission.

1

7. On April 20, 2022, less than 90 days prior to the filing of this Petition and Jury Demand, the Iowa Civil Rights Commission issued a Right to Sue Letter and administrative release with respect to Plaintiff's charges.

## BACKGROUND FACTS

8. Plaintiff Jacqueline ("Jackie") Loew began working for Defendant Saydel Community School District ("Saydel") as a High School English Teacher in August 2019.

9. In addition to high Sophomore English classes, Jackie also taught upper-level English Advanced Placement ("AP") courses.

10. Defendant Principal Kevin Schulte was Jackie's direct supervisor.

11. In February 2021, because of the changes experienced during the COVID-19 pandemic and hybrid model classes, Schulte required AP teachers, including Jackie, to host extra study sessions for AP students.

12. Jackie scheduled a meeting with Schulte and her Union Representative to discuss the extra AP study sessions.

13. Jackie asked Schulte if she would be compensated for the extra time for planning and holding additional AP study sessions outside of her contracted hours.

14. Schulte told Jackie she would not be compensated and needed to work the lessons into her contract hours and plan them on her own time.

15. Shortly after this meeting, Jackie discovered Schulte had offered the two male AP teachers the ability to complete the extra AP sessions outside of contract hours and receive additional compensation for their time.

16. Jackie assumed Schulte had changed his mind about compensation and emailed to ask again about the expectations for the study sessions.

EXHIBIT B

17. Jackie told Schulte she knew the male AP teachers were being offered additional pay for the same duties being asked of her.

18. Schulte responded to the email with Saydel Superintendent Todd Martin and Human Resources Representative Kristi Powers included in his reply, asking if Jackie was accusing him of sex discrimination.

19. Jackie responded she was not accusing him of anything but wanted to be sure she was being treated fairly and receiving equal pay for equal work.

20. Schulte told Jackie he wanted to meet in person to discuss "insights" into the things he sees while working with Jackie.

21. On March 10, 2021, Schulte held a meeting with Jackie.

22. During this meeting, Schulte told Jackie he wanted to share his feelings with her about how he felt he was being accused of sex discrimination.

23. Schulte claimed they had not discussed working outside of contract hours that qualified for extra pay.

24. Jackie clarified she did not refuse to work outside of contract hours; she just did not want to work outside of contract hours for free.

25. Schulte then brought up Jackie's previous request for a letter of recommendation and told Jackie that after her complaint of sex discrimination, he could no longer give her a recommendation – or at least one that she would "want to use."

26. Schulte proceeded to criticize Jackie and told her she needed to be more mindful because he felt she came off as abrasive.[1]

---

[1] Women are often subjected to gender bias and double standards in the workplace. While men are often praised for being "aggressive" with their goals or "persistent," women with similar attributes are viewed negatively and are described as "abrasive." Andrus, Joel & Dave Sullivan, *Changing the Tide: Reducing*

27. On May 4, Jackie asked to meet with Schulte again to discuss some issues within the English Department.

28. Schulte asked Jackie if she was recording the conversation.

29. Jackie responded that yes, she was recording the meeting for her own protection.

30. Jackie's answer upset Schulte.

31. Schulte proceeded to lecture Jackie on the value of trust, told her he did not trust her, was concerned about their professional relationship, and abruptly ended the meeting.

32. On May 12, Jackie attended a meeting with Superintendent Martin, Ms. Powers, and her Union Representative to discuss her complaint of sex discrimination against Schulte.

33. Jackie told Superintendent Martin that Schulte had been painting a false narrative of her with the other staff, retaliating against her, and treating her unprofessionally.

34. Jackie complained about Schulte interrupting her classes by pulling her students out and questioning them about her.

35. Jackie requested another administrator complete her upcoming summative evaluation due to the breakdown of the relationship with Schulte.

36. Superintendent Martin assured Jackie that Schulte would not be completing her summative evaluation.

37. On May 13, Schulte emailed Jackie about her summative evaluation and told her Assistant Principal Alex Stubbers would take his place in completing the evaluation he'd begun.

38. Stubbers is Schulte's cousin.

---

*Gender Bias at Work*, ROBERT J. TRULASKE, SR. COLL. OF BUS. (October 29, 2021) https://business.missouri.edu/about/news/changing-tide-reducing-gender-bias-work (". . . 66% of women are told in performance reviews that they are abrasive, while just 1% of men are given similar feedback.").

**EXHIBIT B**

39. Stubbers refused to complete Jackie's summative evaluation unless she started the evaluation process over completely.

40. Due to the proximity to the end of the school year, it was not feasible or fair to start the evaluation process over again.

41. Because of Stubbers' refusal, Schulte completed Jackie's summative evaluation.

42. On May 17, Jackie met with Ms. Powers to discuss the summative evaluation Schulte completed.

43. Schulte included statements in Jackie's evaluation that her colleagues had "expressed concern about being able to collaborate," and Jackie needed to be more aware of how her delivery impacts the dynamics with her colleagues.

44. These statements were direct retaliation for Jackie's complaints about inequitable pay and Principal Schulte.

45. Ms. Powers asked if anything had changed with Schulte between March and the timing of the summative evaluation.

46. Jackie explained to Ms. Powers again the retaliation she'd been experiencing since her complaint.

47. Jackie told Ms. Powers that Schulte's comments in her summative evaluation were demoralizing, and the characterizations were unfair and inaccurate.

48. Ms. Powers advised Jackie of Saydel's grievance process and policies.

49. On May 28, Jackie filed a formal grievance against Schulte for his retaliation and harassment of her for bringing forth claims of unequal pay discrimination.

50. On June 2, Equity Coordinator Aimee Rhode interviewed Jackie in response to her grievance.

EXHIBIT B

51. Jackie relayed all the issues with Schulte's retaliation and not treating her, or offering to pay her, equally.

52. Rhodes's final investigative report acknowledged Schulte's retaliation.

53. However, the report blamed Jackie for Schulte's retaliation due to her complaints about Schulte's sex discrimination and retaliation and recording their conversations.

54. Schulte's statement during the investigation contained admissions that he lied about Jackie being abrasive and aggressive and admitted that the tension grew when he found out Jackie had recorded conversations to protect herself.

55. Saydel did not punish Schulte or otherwise remedy the situation after the investigation concluded Schulte had retaliated against Jackie.

56. Due to the lack of response, Jackie appealed the investigation decision.

57. On September 4, Jackie received the final report.

58. Saydel continued to ignore Schulte's harassment and retaliation of Jackie.

59. In August 2021, Jackie began taking care of her father, another Saydel High School employee, full-time at her home as he transitioned into hospice care.

60. During this time of Jackie's FMLA leave, Schulte ignored Jackie's emails and refused to communicate with her.

61. Jackie continued to write substitute plans to avoid being fired while trying to spend precious time with her father in his final days.

62. Ms. Powers had informed Schulte that Jackie did not need to complete substitute plans while her father was dying.

63. Schulte deliberately withheld this information from Jackie.

EXHIBIT B

64. On September 29, Schulte admitted to Jackie he had been avoiding her since April and did not support her while her father was dying.

65. Schulte's avoidance, ignoring Jackie, failing to communicate with her, and retaliation was in response to Jackie's repeated complaints about Schulte's gender discrimination and retaliation.

66. Principal Kevin Schulte was an employee and/or agent of Defendant Saydel Community School District, acting at all times within the scope of his employment or agency.

67. Aimee Rhode was an employee and/or agent of Defendant Saydel Community School District, acting at all times within the scope of her employment or agency.

## COUNT I
## VIOLATION OF THE CIVIL RIGHTS ACT
## SEX AND/OR GENDER DISCRIMINATION

68. Plaintiff repleads paragraphs 1 through 67 as if fully set forth herein.

69. Plaintiff is a woman protected from discriminatory practices in the workplace pursuant to the Iowa Civil Rights Act.

70. Defendants subjected Plaintiff to harassment and discrimination on the basis of her sex.

71. Plaintiff's sex and/or gender was a motivating factor in Defendants' harassment and discrimination.

72. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to emotional distress, lost wages, and other benefits of employment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate Plaintiff for her injuries and damages, for pre-

EXHIBIT B

judgment and post-judgment interest, for attorney fees and litigation expenses, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## RETALIATION

73. Plaintiff repleads paragraphs 1 through 72 as if fully set forth herein.

74. Plaintiff opposed sex discrimination and other practices made unlawful by the Iowa Civil Rights Act.

75. Defendants retaliated against Plaintiff through persistent harassment and by constructively discharging her.

76. Plaintiff's opposition and/or resistance to sex discrimination was a motivating factor in Defendants' retaliation.

77. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including by not limited to emotional distress, lost wages, and other employment benefits.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate Plaintiff for her injuries and damages, for pre-judgment and post-judgment interest, for attorney fees and litigation expenses, for the costs of this action, for appropriate equitable and injunctive relief, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

EXHIBIT B

## JURY DEMAND

COMES NOW the Plaintiff and demands a trial by jury.

                                      */s/ Brooke Timmer*
                                      TIMMER & JUDKINS, P.L.L.C.
                                      Brooke Timmer AT0008821
                                      brooke@timmerjudkins.com
                                      Ashley Madsen AT0014921
                                      ashley@timmerjudkins.com
                                      1415 28th Street, Suite 375
                                      West Des Moines, IA 50266
                                      Telephone: (515) 259-7462
                                      Fax: (515) 361-5390
                                      ATTORNEYS FOR PLAINTIFF

**EXHIBIT B**